UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MICHAEL SCUTERI,                                     ) | |
|                  Plaintiff, ) | |
|       v.                                                  ) | No. 2:23-cv-00161-JPH-MJD |
| INDIANA DEPARTMENT OF ) <br> CORRECTIONS, ) <br> DUSHAN ZATECKY, ) <br> RENDANT, ) <br> ETHRIDGE, ) <br> HAMMER, ) <br> ALLENDER, ) <br> HOUGHTA, ) <br> JACKIE HELDERMAN, ) | |
|                  Defendants. ) | |

**ORDER SCREENING COMPLAINT AND
DIRECTING FURTHER PROCEEDINGS**

Michael Scuteri, a prisoner at Putnamville Correctional Facility, brings this lawsuit under 42 U.S.C. § 1983. Because Mr. Scuteri is a prisoner, the Court must screen his complaint before directing service on the defendants.

**I.
Screening Standard**

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020).

Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than formal pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II.
## The Complaint

The complaint names the following defendants: (1) Indiana Department of Corrections; (2) Warden Dushan Zatecky; (3) Deputy Warden T. Phegely,[1] (4) Officer Rendant; (5) Sergeant Ethridge; (6) Sergeant Hammer; (7) Sergeant Allender; (8) Lieutenant Houghta; and (9) Jackie Helderman. (Docket Entry 2). Mr. Scuteri seeks damages and injunctive relief. (*Id.* at 9).

The complaint makes the following allegations:

On June 4, 2022, Officer Rendant planted a pair of leather work gloves in Mr. Scuteri's area. (*Id.* at 3). Officer Rendant then told Mr. Scuteri, "These gloves are a Class-B write up. But if you bring me a motor and point out where you got it, I will make it go away. If you don't, I will make sure they take away your good time." (*Id.*). According to the complaint, this statement was an attempt to

---

[1] Deputy Warden T. Phegely is not named in the caption of the complaint as required by Rule 10(a) of the Federal Rules of Civil Procedure but is named as a defendant in the body of the complaint.

2

blackmail Mr. Scuteri into providing damaging information about a prison gang, also known as a "security threat group." (*Id.*).

Mr. Scuteri wrote a grievance complaining about this incident. Grievance specialist Helderman provided the following response: "You have not provided any evidence to substantiate your allegations. I can assure you that the Department is striving to maintain a professional atmosphere and staff members are expected to conduct themselves in an appropriate manner; however, you must also remember to follow set guidelines and uphold good behavior yourself." (*Id.*).

On June 5, 2022, Officer Rendant approached Mr. Scuteri in the day room and told him, "You are a fat, lazy obese B****." (*Id.*). When Mr. Scuteri asked to speak to a superior officer, Officer Rendant told him, "I don't gotta do s*** for you, you punk a** B****." (*Id.* at 4). These statements caused Mr. Scuteri to have a "schizophrenic episode" at which point he "may have made several statements without proper control of [his] faculties." (*Id.*). He called his wife on the phone, who later reported this incident, and the matter was referred to Sergeant Hammer. (*Id.*).

Mr. Scuteri wrote a grievance complaining about this incident as well. (*Id.*). Grievance Specialist Helderman provided the following response: "I can assure you that the Department is striving to maintain a professional atmosphere and staff members are expected to conduct themselves in an appropriate manner." (*Id.*).

3

Mr. Scuteri was charged with "Unauthorized Possession" arising from the incident with the leather work gloves and "Intimidation" arising from the incident in which he "may have made several statements without proper control of [his] faculties." (*Id.*).

Sergeant Ethridge served as the disciplinary hearing officer for these charges. She "went out of her way to avoid using ANY of [Mr. Scuteri's] witness statements and the video evidence showing the officer doing anything wrong." (*Id.*). Sergeant Ethridge told Mr. Scuteri that he needs to "[l]earn [his] place" and that she "can't do anything in regards to staff abusing [him]." (*Id.*). She also told him that she "heard what [he] said on the phone and its obvious [he is] either brain damaged or crazy," and that he is "lucky [she] didn't hear that phone call before [his] screening or [she] would have made sure [he] had an outside case for conspiracy." (*Id.*).

Mr. Scuteri was put in disciplinary segregation for 86 days. (*Id.* at 4-5). After he was removed from disciplinary segregation, he successfully appealed his intimidation conviction. (*Id.* at 4).

While in disciplinary segregation, Mr. Scuteri was subjected to "deplorable" conditions. There was fecal matter in his cell when he arrived, and correctional officers refused to provide him with cleaning supplies for more than 72 hours. (*Id.* at 5). The unit contained "full size cockroaches that freely roam" the corridors. (*Id.*). His "mattress was completely disassembled." (*Id.*). There is "no air conditioning" and the inside of his cell was close to 100 degrees. (*Id.*). Showering in the disciplinary unit is "a particularly disgusting affair." (*Id.* at 6).

The unit is not well ventilated, and Mr. Scuteri's asthma and COPD were aggravated when guards sprayed other inmates with pepper spray. (*Id.*). He was "allowed a full sized Colgate toothbrush, but no holder. Soap, but no dish. Toothpaste. No brush for [his] beard, which [he] later had to shave off because [he] looked like an extra from 'Pirates of the Caribbean.'" (*Id.*). When his property was brought to him, he noticed that his "legal work had been ransacked and was disorganized." (*Id.*). He was restricted from using his GTL tablet for 30 days based on his disciplinary sanctions. (*Id.* at 7). He was refused over-the-counter pain medications for a pre-existing spine injury. (*Id.*). He was refused anti-psychotic medications. (*Id.*). "As far as the food is concerned, apparently [prisoners] are not allowed salt and pepper," and the "portions of these deplorable items [were] greatly lacking." (*Id.*). He was not permitted to wash his blanket for the 86 days he was in segregation. (*Id.*). And the "book cart might as well only have kindling and fire starters on it as none of the books come with all the pages if there are any books at all." (*Id.*).

These conditions violated the policies and procedures of the Indiana Department of Correction. (*Id.* at 5-8).

### III.
### Discussion

Applying the screening standard to the facts alleged in the complaint, certain claims are dismissed while other claims shall proceed as submitted.

All claims against the Indiana Department of Corrections are **dismissed** because state agencies are immune from suit in federal court under the Eleventh

5

Amendment, and because the Indiana Department of Corrections is not a suable entity under § 1983. *Nuñez v. Indiana Dep't of Child Services*, 817 F.3d 1042, 1044 (7th Cir. 2016); *Obazuaye v. Illinois Dep't of Human Services*, 2002 WL 1830686 at *1 (7th Cir. 2022) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989)).

All claims against Warden Zatecky, Deputy Warden T. Phegely, Sergeant Allender, and Lieutenant Houghta are **dismissed**. The complaint lists these individuals in the caption, but the body of the complaint does not mention them. "Individual liability under § 1983 requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (cleaned up) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.... A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.")). Accordingly, the claims against these defendants are dismissed for a lack of personal involvement.[2]

All claims against Officer Rendant are **dismissed**. First, verbal harassment and unprofessional statements, without more, fail to state a claim under § 1983. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple

---

[2] At one point, the complaint states that all defendants "caused me physical harm due to negligence and malicious indifference in the course of their job," but this is a legal conclusion and is insufficient to state a legal claim. *Twombly*, 550 U.S. 564-65; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."). Second, Officer Rendant allegedly planted a pair of leather work gloves in Mr. Scuteri's area in order to blackmail him into providing information about a prison gang. Mr. Scuteri was later charged with "Unauthorized Possession" of the leather work gloves and "Intimidation." But, fraudulent conduct in the course of a prison discipline hearing is not a violation of due process. *Lagerstrom v. Kingston,* 463 F.3d 621, 625 (7th Cir. 2019). Instead, the prisoner receives "protection from such arbitrary action . . . in the procedures mandated by due process," including the right to advance notice, exculpatory evidence, an impartial decisionmaker, and written findings. *Id.*; *see also Hanrahan v. Lane,* 747 F.2d 1137, 1141 (7th Cir. 1984) ("We find that an allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections as required in *Wolff v. McDonnell* are provided.").[3]

All claims against Grievance Specialist Helderman and Sergeant Hammer are **dismissed**. At most, the complaint alleges that these defendants did not believe Mr. Scuteri's allegations against Officer Rendant or failed to investigate

---

[3] In addition, 86 days in disciplinary segregation is not "sufficiently serious" to implicate substantive due process. In *Langerstrom*, the plaintiff alleged that the defendant violated his substantive due process rights by filing a false conduct report and that as a result he suffered 396 days in the harshest and most restrictive prison in Wisconsin. *Langerstrom,* 463 F.3d at 622, 625. The Seventh Circuit affirmed the district court's conclusion that plaintiff's claims did not implicate substantive due process and held that any substantive due process claim was properly dismissed. *Id.* at 625-626.

or take seriously his allegations of abuse. However, "the Constitution does not require officials to investigate or otherwise correct wrongdoing after it has happened." *Garness v. Wis. Dep't of Corr.*, 2016 WL 426611, at *2 (W.D. Wis. Feb. 3, 2016) (citing *Whitlock v. Brueggemann*, 682 F.3d 567, 588-89 (7th Cir. 2012); *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). Similarly, interference with the grievance process or failing to follow the prison's grievance policy does not violate the Constitution. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause." *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)).

Finally, Mr. Scuteri fails to state an Eighth Amendment conditions of confinement claim arising from his time in disciplinary segregation. Conditions of confinement claims have

> both an objective and subjective component. A prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter, meaning that they denied the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety. Second, in covering the subjective component of the inquiry, the inmate must prove that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate.

*Thomas v. Blackard*, 2 F.4th 716, 719-20 (7th Cir. 2021) (cleaned up).

Although Mr. Scuteri lists several conditions of disciplinary segregation that he characterizes as "deplorable," the complaint does not allege that any defendant was subjectively aware of these conditions and deliberately indifferent

8

to the risks those conditions posed to Mr. Scuteri's health, safety, or dignity. Accordingly, these claims are **dismissed**.

The due process claim alleged against Sergeant Ethridge **shall proceed**. The complaint alleges that Sergeant Ethridge violated Mr. Scuteri's rights at his prison disciplinary hearings for intimidation and unauthorized possession by declining to consider Mr. Scuteri's (presumably exculpatory) witness statements and video evidence. Mr. Scuteri's due process rights are implicated only if he had a liberty interest at stake. "Whether a liberty interest is implicated by disciplinary segregation depends on both the time and conditions of confinement. . . . " *Beamon v. Pollard*, 711 F. App'x 794, 795–96 (7th Cir. 2018) (affirming summary judgment in favor of defendants and concluding that 135 days in segregation— absent any atypical conditions related to confinement—does not violate the Fourteenth Amendment) (citing *Hardaway v. Meyerhoff*, 734 F.3d 740, 745 (7th Cir. 2013) (no liberty interest in avoiding 182 days' segregation); *Lekas v. Briley*, 405 F.3d 602, 611-12 (7th Cir. 2005) (noting that 90 days' segregation was "still not so long as to work an atypical and significant hardship" where conditions were not atypical and significant to alter the nature of confinement)). Whether the conditions Mr. Scuteri faced during his 87 days in segregation were significantly atypical requires further development. *See Williams v. Brown*, 849 F. App'x 154, 157 (7th Cir. 2021) (vacating screening dismissal of due process claim based on deficient procedure in the disciplinary process that led to plaintiff's placement in punitive segregation for eight months under conditions that placed his health and life at risk); *Marion v. Columbia Corr. Inst.*, 559 F.3d

9

693, 697-98 (7th Cir. 2009) (prisoner's confinement in segregation for 240 days may implicate liberty interest).

The due process claim alleged against Sergeant Ethridge **shall proceed.** This is the only viable claim identified by the Court. All other claims have been dismissed. If the plaintiff believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have **through October 31, 2023,** in which to identify those claims.

The **clerk is directed** to terminate (1) Indiana Department of Corrections; (2) Warden Dushan Zatecky; (3) Officer Rendant; (4) Sergeant Hammer; (5) Sergeant Allender; (6) Lieutenant Houghta; and (7) Jackie Helderman as defendants on the docket.

## IV.
## Service of Process

The **clerk is directed** pursuant to *Fed. R. Civ. P.* 4(c)(3) to issue process to defendant Sergeant Ethridge in the manner specified by Rule 4(d). Process shall consist of the complaint, (Dkt. 1), applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

The **clerk is directed** to serve the Indiana Department of Correction employee Sergeant Ethridge electronically.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**SO ORDERED.**

Date: 10/2/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

MICHAEL SCUTERI
286882
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com

Electronic service to Indiana Department of Correction:
    Sergeant Ethridge
    (At Putnamville Correctional Facility)