UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MICHAEL SCUTERI, </br></br> Plaintiff, </br></br> v. </br></br> ETHRIDGE, </br></br> Defendant. | ) </br> ) </br> ) </br> ) </br> ) No. 2:23-cv-00161-JPH-MJD </br> ) </br> ) </br> ) </br> ) |

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Michael Scuteri, who is housed by the Indiana Department of Correction ("IDOC") at Putnamville Correctional Facility, alleges in this lawsuit that Defendant Tiffany Ethridge violated his Fourteenth Amendment due process rights during disciplinary proceedings against him.[1] Mr. Scuteri and Ms. Ethridge have both moved for summary judgment. Dkts. [29], [50]. For the reasons below, Mr. Scuteri's motion is **DENIED** and Ms. Ethridge's motion is **GRANTED**.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the

---

[1] Mr. Scuteri raised several other claims in his complaint, but this due process claim was the only claim allowed to proceed in the Court's screening order. Dkt. 14.

record and draws all reasonable inferences from it in the light most favorable to the nonmoving party.  *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).  A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant.  *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.  Fed. R. Civ. P. 56(e).

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made.  *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)).  The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material

fact.  *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Loc. Union 150*, 335 F.3d 643, 647 (7th Cir. 2003).

## II.
## Factual Background

The parties have filed cross motions for summary judgment, but they largely agree on the material facts.  Therefore, the following statement of facts has been evaluated pursuant to the standard set forth above.  The facts are considered undisputed except as otherwise noted.

Mr. Scuteri has been incarcerated at Putnamville since December of 2021.  Dkt. 51-1 at 12 (Scuteri Dep.).  Mr. Scuteri has diagnosed mental health conditions, including schizoaffective disorder, schizophrenia with paranoid delusions, disassociated behavior, and posttraumatic stress disorder.  *Id.* at 9–10.  His symptoms include auditory and visual hallucinations, suicidal ideation, anxiety attacks, and bouts of anger.  *Id.* at 10.  He experiences these symptoms each day.  *Id.* at 11.

**A. Mr. Scuteri's Run-Ins with Officer Rendant**

On June 4, 2022, Officer Rendant approached Mr. Scuteri at his bunk and began searching.  *Id.* at 13.  Among other things, he told Mr. Scuteri that he found a pair of gloves at his box, informing him that it was a Class B write-up.  *Id.* at 14.  Mr. Scuteri contends that Officer Rendant offered to ignore the infraction if Mr. Scuteri gave him information on other inmates violating rules.  *Id.*  Mr. Scuteri refused, so Officer Rendant wrote him up on a Class B Conduct

Report for unauthorized possession of the gloves. *Id.* at 19. Mr. Scuteri denies ever having a pair of gloves at his bunk. *Id.* at 15.

The next day, Mr. Scuteri was in his dorm speaking to fellow inmate Robert Noble when Officer Rendant walked up to him and said, "You're a fat, lazy, obese bitch." *Id.* at 26. Officer Rendant called Mr. Scuteri a "bitch" several more times and Mr. Scuteri stated, "Okay. Call me bitch one more time, and we'll see who's a bitch." *Id.* at 27. The verbal altercation continued and Mr. Scuteri said, "Dude, I will kill your entire fucking family. Get the fuck away from me . . . . I have no problem stabbing you in the fucking face, you fucking bitch. Get the fuck away from me or I'll kill you right now." *Id.* at 28. Mr. Scuteri also called his wife and told her he "will wind up killing [Officer Rendant], but I'll be doing this world a favor." (Recording of phone call). Officer Rendant wrote Mr. Scuteri up on a Class B conduct report for intimidation. Dkt. 51-1 at 30, 39.

### B. The Disciplinary Hearing

Mr. Scuteri had one disciplinary hearing for both the unauthorized possession and the intimidation charges. *Id.* at 39. A week before the hearing Mr. Scuteri met with a non-party officer to prepare. *Id.* at 41. He pleaded not guilty to the charges and asked to call inmates Thaddeus Pitts and Vincent Dewberry as witnesses on the unauthorized possession charge. Dkt. 51-3 at 2 (Disciplinary Hearing Documents). Mr. Scuteri also attempted to call Mr. Noble as a witness regarding the intimidation charge. Dkt. 51-1 at 43–44. Mr. Scuteri believes that Mr. Noble provided a statement in which he said, "He

walked up to Mike and just called him a big, fat, obese bitch. Mike went off." *Id.* at 44.

Ms. Ethridge conducted the disciplinary hearing. Dkt. 51-1 at 39–40. She reviewed video footage of the search, noting that she "observed the officer approach you at your bed. You immediately get up and walk away. He begins a property search of your box, bed area, and bed. After the search is over, he walks away with confiscated articles." Dkt. 51-3 at 8. Mr. Scuteri stated that he never owned gloves. *Id.* at 1. For the intimidation charge, she reviewed video footage. Dkt. 51-4 (Video Review). She "observed the officer sitting at the desk the entire time." *Id.* At the hearing, Ms. Ethridge called Mr. Scuteri crazy, and said, "[i]f I had heard that phone call before you got charged, I'd have you on an outside case for conspiracy." Dkt. 51-1 at 44. Mr. Scuteri then "started blacking out" and "went off" during the middle of the disciplinary hearing. *Id.*

For the unauthorized possession charge, Mr. Scuteri was given a written reprimand telling him not to have gloves and a GTL restriction prohibiting him from using the phone or kiosk for 35 days. *Id.* at 55; dkt. 51-3 at 1. He did not lose any earned credit time. Dkt. 51-1 at 55; dkt. 51-3 at 1.

On the intimidation charge Mr. Scuteri was sentenced to ninety days in restrictive housing. Dkt. 51-1 at 75. He also lost 90 days of earned credit time and received a one credit class demotion. *See* dkt. 51-5 at 3–4 (Disciplinary Appeal Documents). He appealed both charges and the charge for intimidation was dismissed. *Id.* at 3. In dismissing the charges, a non-party IDOC official

5

stated that the charges were dismissed "because the documents associated with the case cannot be located." *Id.* The charges were removed from his conduct record and his earned credit time was returned. Dkt. 51-1 at 60. In the meantime, however, Mr. Scuteri spent eighty-six days in restricted housing as a sanction for the intimidation charge. Dkt. 51-1 at 55–56.

### III.
### Discussion

Mr. Scuteri claims that Ms. Ethridge violated his due process rights at his disciplinary hearing. Ms. Ethridge argues that she is entitled to summary judgment because his due process rights were not implicated by the sanctions imposed and even if they were, Mr. Scuteri's due process rights were not violated.

"To succeed on a due process claim stemming from a prison disciplinary proceeding, an inmate must demonstrate (1) a constitutionally protected liberty interest and (2) deficient procedures attendant to the deprivation of that interest." *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024). Due process procedures in prison disciplinary proceedings require: "(1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Id.* at 965 (quoting *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007)). Where the inmate is "facing only disciplinary action like segregation, rather than

6

disciplinary action affecting the length of their carceral sentence, like a reduction in good-time credit," however, he is entitled only to "informal, nonadversarial due process."  *Id.*  "[I]nformal due process requires only that an inmate is provided (1) 'notice of the reasons for the inmate's placement' in segregation and (2) 'an opportunity to present his views,' for instance, in a written statement or at a hearing.  *Id.* at 966 (quoting *Adams v. Reagle*, 91 F.4th 880, 895 (7th Cir. 2024)).  The potential loss of good-time credit, in contrast, "triggers a formal, rather than informal due process analysis."  *Id.*

Ms. Ethridge argues that Mr. Scuteri's due process rights were not implicated because he was not deprived of a constitutionally protected liberty interest.  For the charge of unauthorized possession of gloves, the sanctions included a written reprimand—"don't poss. unauth prop."—and a 35-day loss of GTL privileges—not being allowed to use the phone, kiosk, or tablet.  Dkt. 52 at 6 (citing dkt. 51-1 at 69–70).  Mr. Scuteri has not shown that these sanctions involved a constitutionally protected liberty interest.

Ms. Ethridge next argues that Mr. Scuteri's due process rights were not implicated by the intimidation charge because the sanctions imposed for that offense, 86 days in segregation, similarly do not implicate a constitutionally protected liberty interest.  While a term of segregation of approximately 90 days ordinarily would not implicate a liberty interest, *Ealy*, 109 F.4th at 964–65, it could, depending on the conditions of confinement.  The parties dispute whether Mr. Scuteri's time in segregation implicated his liberty interests, so the Court assumes that it did.  Even so, he was entitled only to informal,

7

nonadversarial due process,[2] which is satisfied when an inmate is provided notice of the reasons for his placement in segregation and an opportunity to present his views. *Id.* at 965–66; *Adams*, 91 F.4th at 895 (holding that prisoner whose loss of good time credits were restored was entitled only to informal due process).

Here, it's undisputed that Mr. Scuteri was given advance notice of the charges and the upcoming hearing, a meeting with a non-party official before the hearing, and a hearing. He does not deny that he made threatening statements toward Officer Rendant. Dkt. 29 at 4 ("The plaintiff takes responsibility that this event occurred. The occurrence is not at issue."). Instead, he contends that Ms. Ethridge reviewed the wrong video and failed to consider his witness statements. Mr. Scuteri points out that the video presented at the hearing, and filed with this Court, shows an officer sitting at a desk and him using the kiosk at some point and suggests that another video, which was not presented, would have shown the incident at issue. Dkt. 59 at 2. But Mr. Scuteri does not support his contention that such other video exists, and, even if it did, he does not show how that evidence would have been exculpatory and cleared him of the intimidation charge.

Similarly, Mr. Scuteri designates no evidence that Ms. Ethridge refused to consider any other evidence that was presented, including witness

---

[2] The parties rely on the more stringent due process standards for disciplinary hearings that result in a reduction in credit time. *See* dkt. 60 at 3 (citing *Superintendent, Mass Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985)). Even under that formal due process standard, the outcome of this case would remain the same.

8

testimony. He also contends that Officer Rendant's behavior combined with his mental health conditions, and the IDOC's failure to treat them, contributed to his actions. He claims that the mental health documentation presented at the hearing was false. But, again, he has not designated evidence (including the mental health documentation at issue) to support these contentions and therefore has not shown that Ms. Ethridge failed to review the available evidence.

Having admitted to making the threatening statements toward Officer Rendant and having failed to show that Ms. Ethridge refused to consider any of the evidence that was presented, Mr. Scuteri has not designated evidence from which a jury could reasonably find that Ms. Ethridge violated his due process rights with respect to the intimidation charge. Similarly, the charge of unauthorized possession of gloves was based on the conduct report, photographs, video evidence, and evidence from witnesses, dkt. 51-3 at 1, so no jury could reasonably find a violation of due process there.

Last, Mr. Scuteri argues that he also lost an opportunity for earned credit time, *i.e.*, placement in the Case Plan Credit Time Program, because of his disciplinary convictions. But denial of prison programming does not implicate liberty interests protected by the Due Process Clause. *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) (no liberty interest in programs that could hasten a prisoner's release if completed successfully).

9

# IV.
# Conclusion

For the reasons explained above, Mr. Scuteri's motion for summary judgment, dkt. [29], is **DENIED** and Ms. Ethridge's motion for summary judgment, dkt. [50], is **GRANTED**. Judgment consistent with this Order and the Court's screening order, dkt. [14], shall now issue.

**SO ORDERED.**

Date: 3/7/2025

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

MICHAEL SCUTERI
286882
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel